James K. MONTGOMERY, Plaintiff,

v.

Elliot RICHARDSON, Secretary, Health, Education and Welfare, Defendant.

Civ. A. No. 71–C–96–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Feb. 15, 1972.

D. H. Frackelton, Widener & Frackelton, Bristol, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

James K. Montgomery, the claimant, brings this action under 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for review of a decision of the Secretary of Health, Education and Welfare, which held that claimant was not entitled to a period of disability or to disability insurance benefits under the Act as amended, 42 U.S.C.A. §§ 416(i) and 423.

Montgomery filed his application for disability benefits on March 3, 1970, alleging disability from November 24, 1969, because of a liver disorder. His application was denied initially, and again upon reconsideration. By his request, a hearing was conducted in Bristol, Virginia, on December 2, 1970, at which claimant, represented by counsel, appeared and testified, as did his father, Mr. Jesse C. Montgomery. Based upon the evidence developed in the record, the hearing examiner held that claimant failed to demonstrate by competent medical evidence that he was suffering from an impairment or impairments of such severity as to prevent him from engaging in substantial gainful activity at any time for which his application was effective. The decision rendered by the hearing examiner on March 25, 1971, became the final decision of the Secretary when the Appeals Council affirmed the examiner's decision on May 18, 1971. Because the claimant meets the special earnings requirement at least through June 30, 1974, the decision is necessarily limited to the date it was rendered as to a finding of disability or non-disability.

The sole issue in this proceeding is whether the Secretary's decision is supported by substantial evidence. 42 U.S.·C.A. § 405(g); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

From a letter brief filed herein by claimant's counsel, it appears that claimant has relinquished his claim to disability benefits for the period after May 18, 1971, inasmuch as claimant acknowledged at the hearing that he thought he could return to the job he held immediately before filing his application. He nevertheless challenges the Secretary's determination that he was not disabled at any time during the 18 month period from November 24, 1969, to May 18, 1971. Thus, in order to prevail in this case, claimant must show that he was under a disability for a continuous period of not less than twelve months prior to May 18, 1971, the date the Secretary's decision became final. 42 U.S.C.A. § 423(d) (1) (A).

The pertinent facts are not disputed. Claimant is 43 years old and resides with his wife in Bristol, Virginia. He attended college for three incomplete quarters, and he has taken correspondence courses in electronics. Since he left college, he has had many jobs, generally clerical in nature. He was working as a hotel night auditor when he stopped working in November 1969 because of his liver condition; he has worked only sparingly since.

Much of claimant's medical problems stem from his long history of chronic ingestion of alcohol. The earliest medical report in the record is a discharge summary from the Bristol Memorial Hospital covering claimant's hospitalization from February 11 to March 7, 1970. Dr. B. Y. Cowan, the attending physician, noted that claimant was admitted because of jaundice and upon his complaints of fever, chills, body ache, nausea, and abdomen pain, all of which he experienced with increasing severity for two months prior to his admission. Physical examination showed definite jaundice of the entire body, and multiple telangiectasis over the upper quadrant of the anterior chest. His abdomen was greatly distended, with dilated veins across its lower portion. The liver extended down about five fingers, and ap-

peared to be nodular, firm, and tender. There was no splenic enlargement, nor edema in the lower extremities. Claimant was treated with vitamins, bed rest, and diuretics, to which he responded well, with reduction in body ascites. A liver punch biopsy revealed moderately advanced border cirrhosis and fatty metamorphosis. Claimant was discharged on March 11, 1970, with a diagnosis of cirrhosis of the liver and duodenal ulcer, and was ordered to continue the rest-medication program at home.

At government expense, claimant was examined by Dr. J. V. Abad, an internist, on June 25, 1970. Dr. Abad stated that claimant admitted he had been drinking heavily since he was 17 years old, but that he had stopped altogether in December 1969. Extensive physical examinations showed that claimant's condition had in fact improved. Dr. Abad submitted the following diagnosis: "(1) Laenner's cirrhosis of the liver, compensated. 2) Hyperuricemia, probably secondary to depressed urinary excretion."

After the hearing, Mr. Montgomery was examined by a psychiatrist, Dr. M. D. Hogan, on January 7, 1971. The doctor stated that during the interview, claimant showed much hostility, which he thinly veiled. He noted however that claimant was extremely intelligent and of good judgment, and that he was well-oriented in all spheres. His speech was relevant and coherent, and his memory was intact for both recent and remote events. Dr. Hogan's diagnosis was "personality disorder, mixed, both anti-social and passive-aggressive types," and he indicated that although his alcoholism "is not added as a psychiatric diagnosis, it might well be." He opined that claimant's ability to perform simple, complex or varied tasks and to follow instructions was excellent. On the other hand, his ability to relate to people socially or to perform a job requiring frequent contact with others was severely impaired. Nevertheless, Dr. Hogan indicated that no treatment was required.

The most recent medical report is that submitted by Dr. K. A. Jamison, a general and orthopaedic surgeon. He reported that claimant was admitted to Bristol Memorial Hospital on January 11, 1971, with x-rays revealing a filling defect in the stomach, apparently neoplastic in origin. Exploratory surgery of the abdomen, however, revealed no evidence of neoplasm, ulceration or incipient growth, but his liver was observed to be very large and irregular. A liver biopsy supported Dr. Jamison's diagnosis of portal cirrhosis. The doctor also commented:

It is my impression that this condition will improve within a period of one year, whereby, he can be rehabilitated to some sedentary occupation if the patient follows the treatment prescribed by the internist of the Bristol Memorial Hospital Clinic and abstains from alcohol.

At the hearing claimant testified that he stopped working in November 1969 because his liver disorder induced severe pain. Because this condition did not greatly improve with inactivity, he sought medical treatment in February 1970. On his doctor's advice, he engaged in several odd jobs in the summer of 1970, and a few days before the hearing he worked as a sales clerk in a friend's business. The odd jobs, consisting of digging and planting, forced him to return to bed for extensive rest periods. Moreover, by increasing his ingestion of medication to cope with the tasks of the temporary clerking job, his proficiency therein was decreased. He stated that he rests frequently and continues to take several forms of medication, and that he is able to perform general housekeeping tasks. He also noted that he has sought help from employment agencies but they did not send him anywhere for interviews because he was under medical care. Commensurate with the extent of his observation, Mr. Jesse C. Montgomery, claimant's father, corroborated his son's testimony.

█ In this proceeding the initial burden is upon the claimant to show

that he suffers from an impairment of such severity as to preclude gainful activity, Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); it is not the burden of the Secretary to make an initial showing of non-disability.

■ Establishment of a disability which would entitle claimant to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months; and, second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful activity. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

■ In his decision the hearing examiner found *inter alia*:

4. the medical evidence establishes that the claimant has been given diagnoses of cirrhosis of the liver, compensated, duodenal ulcer, and personality disorder, mixed, both anti-social and passive-aggressive types.

Of these impairments, claimant relies primarily upon the liver disorder as the source of his disability. That this disorder originated largely from chronic alcoholism does not bar recovery of Social Security benefits, assuming that the other requirements under the Act have been met. Lewis v. Celebrezze, 359 F.2d 398 (4th Cir. 1966). Given the undisputed existence of these impairments, the crucial inquiry is whether they were so severe as to have precluded any substantial gainful activity during the period, as noted, between November 24, 1969, and May 18, 1971.

■ The court is of the opinion that the Secretary's determination, that at no time were claimant's impairments so severe as to preclude gainful activity, is not supported by substantial evidence to the extent that the determination applies to the 18 month period at issue here. The medical evidence clearly indicates that although claimant stopped drinking in December 1969, his liver condition continued to be so debilitating as to necessitate hospitalization on two occasions, one lasting nearly a month. This is not therefore a situation in which the liver condition becomes disabling only after excessive drinking. At the termination of the first hospital stay, Dr. Cowan prescribed a continued treatment of rest and medication; at the termination of the second, Dr. Jamison reiterated Dr. Cowan's prescription, adding that claimant in effect could return to sedentary work in a year. The Secretary is of course not bound by the doctors' conclusions, both implicit and explicit, of disability, but he cannot and should not ignore them. See e. g. Crockett v. Cohen, 299 F.Supp. 739 (W.D.Va. 1969).

There is no evidence that claimant has resumed his drinking habits after December 1969. Nor is there any indication that he is a malingerer. On his doctor's advice to increase his activity because of overweight and in order to test his physical capacity for work, the claimant engaged in several odd jobs. He was forced to discontinue each job because the pain and discomfort caused thereby prevented him from continuing. Moreover, he also sought temporary work as a sales clerk in a friend's electronics business, but found however that in order to meet the demands of that job, he had to increase his consumption of the prescribed drugs. Taken together, his sporadic work activity does not demonstrate his ability to engage in substantial gainful activity during the crucial period. See 20 CFR § 404.1534(a).

Finally, the Secretary relies heavily on the medical evidence showing that the claimant's liver disorder was improving after March 1970. However, as indicated by Dr. Jamison's report, for example, the condition was still disabling in the early months of 1971. Although the treatment could be expected to restore his ability to work, which indicates that the condition is somewhat remedial, claimant was still under a disability during the period in issue because his im-

pairments continued to be disabling. 20 CFR § 404.1507.

In light of the above, it is the opinion of this court that claimant is entitled to the establishment of a period of disability from November 24, 1969 to May 18, 1971, with a corresponding right to disability insurance benefits. It is therefore ordered that the decision of the Secretary, to the extent that it applies to this period, is reversed.