Douglas L. MITCHELL, Plaintiff,

v.

Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. T–5489.

United States District Court,
D. Kansas.

Sept. 3, 1975.

N. Royce Nelson, Salina, Kan., for plaintiff.

Roger K. Weatherby, Asst. U. S. Atty., Topeka, Kan., for defendant.

## ORDER AND MEMORANDUM OF DECISION

ROGERS, District Judge.

This proceeding was instituted by the plaintiff against the Secretary of Health, Education, and Welfare as is authorized

by and pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C.A. Section 405(g), for the purpose of obtaining a judicial review of a final decision of the Secretary in denying his application for a period of disability or disability insurance benefits under the laws and regulations governing the Social Security Act (42 U.S.C.A. Section 423 and Section 416(i) as amended.

The record indicates that on December 15, 1971, plaintiff applied for a period of disability and for disability insurance benefits. This was denied, reconsidered, and denied again, resulting in claimant requesting a hearing on September 5, 1972. The hearing was held and benefits were again denied on June 20, 1973, by Administrative Law Judge Richard L. Edgerton. This decision was adopted as the final decision of the Secretary by the Appeals Council on October 10, 1973. This action for judicial review was filed on December 6, 1973, and comes before the Court on cross motions for summary judgment.

The record indicates that the plaintiff was born on August 19, 1925. He has a high school education and special training as a printer. He has worked as a printer and in construction as a general laborer. Plaintiff alleges a disability onset date of July 7, 1971, stemming generally from kidney and stomach ailments. The Administrative Law Judge concluded that "the claimant's medical condition is not of a severity as to prevent him from engaging in substantial and gainful work activity for a continuous 12 month period" as required by 42 U.S.C.A. 423(d)(1)(A), and denied benefits. This now final conclusion is the subject of this Court's review.

The scope of review by this Court is a limited one. In *Gardner v. Bishop*, 362 F.2d 917, 919 (10th Cir. 1966), the Court noted that the findings of fact by the Secretary and the inferences drawn therefrom should not be disturbed by a reviewing court, "if there is substantial evidence to support them". Substantial evidence has been defined as "such rele-

vant evidence as a reasonable mind might accept as adequate to support a conclusion." On the other hand, it is to be remembered that this Act is to be construed liberally in favor of those seeking its benefits. (*Davidson v. Gardner*, 370 F.2d 803 (6th Cir. 1966); *Dvorak v. Celebrezze*, 345 F.2d 894 (10th Cir. 1965); *Ketcherside v. Celebrezze*, 209 F.Supp. 226 (D.Kan.1962))

Although it is clear that the Court may not try a case de novo, it cannot and will not abdicate its traditional function to review the entire record so as to determine whether the findings made by the Secretary are supported by substantial evidence. (*Heilman v. Finch*, T–4459 (D.Kan. January 16, 1970, unpublished))

There are two steps in determining a disability: (1) determination of a medically determinable physical impairment, and (2) an inability to engage in substantial gainful employment caused by that impairment. (*Lucas v. Richardson*, 348 F.Supp. 1156, 1161 (D.Kan. 1972)). While the facts will be examined in closer detail shortly, it is noted at this point that the record clearly establishes a medical disability of sufficient magnitude to prevent plaintiff from returning to his former employment as printer or construction worker. Defendant admits that the vocational expert found this to be the case. Plaintiff's testimony that he cannot stand long enough at one time nor lift certain loads necessary to being a printer is uncontradicted. Further, the vocational expert clearly indicated that *at best* plaintiff could do only "light work." Once this showing was made by the plaintiff, under the rule of *Gardner v. Brian*, 369 F.2d 443 (10th Cir. 1966), the burden shifted to the Secretary to show the reasonable availability of suitable positions in which a person of the claimant's qualifications could work. While there has been some argument that the *Gardner v. Brian* rule was changed by the 1967 amendments to the Act in question (see *Lucas v. Richardson*, 348 F.Supp. 1156 (D.Kan.

1972)), it is generally accepted that this rule is still in effect. (*Hernandez v. Weinberger*, 493 F.2d 1120 (1st Cir. 1974); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968); *Herridge v. Richardson*, 464 F.2d 198 (5th Cir. 1972); *Garrett v. Finch*, 436 F.2d 15 (6th Cir. 1970); *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir. 1974); and *Meneses v. Secretary of Health, Education and Welfare*, 143 U.S.App.D.C. 81, 442 F.2d 803 (1971)). Also, the 10th Circuit seems to assume the continued existence of the rule. (See *Keating v. Secretary of Health, Education and Welfare of U. S.*, 468 F.2d 788, 790–1 (10th Cir. 1972)).

█ It is the holding of this Court that there is no substantial evidence in the record to support the Secretary's finding that no disability exists. Rather, the evidence should convince any reasonable mind that plaintiff is unable to engage in substantial gainful activity due to his medical problems.

The record further shows that plaintiff suffers from kidney ailments that date from World War II when he was given a medical discharge, rated at 10% disabled. Plaintiff is now receiving a 100% service-connected disability benefits pension from the Veterans Administration.

Plaintiff is a chronic "stone maker" and has passed some 300 kidney stones since World War II. In 1958, ⅓ of one of plaintiff's kidneys was removed and from that time until 1970, he visited a Veterans Administration Hospital approximately once a year—whenever his condition worsened.

Plaintiff worked as a printer from 1958 to 1970 and then switched to construction work until July of 1971. This was his last gainful employment. Plaintiff claims and the record clearly indicates that in recent years he has with increasing severity suffered problems with the passing of kidney stones and a related duodenal ulcer. According to the plaintiff, every two weeks or so he passes a kidney stone. The passing may take from a few hours to a few weeks, during which time plaintiff suffers severe pain, and experiences nausea, chills, fever, bowel trouble and other complications. From July 1, 1971, to the hearing date (approximately 1½ to 2 years), plaintiff was hospitalized at least 7 times and spent more than 80 days in the hospital. In the first year after the alleged disability onset date, he spent 63 days in the hospital. Further, the record shows that on doctor's advice, plaintiff has moved closer to a Veterans Administration hospital where he goes on a regular bi-monthly basis. Even when not hospitalized, claimant must be given an injection of pain killer when he passes a stone (as often as once a month) and is frequently bedridden for up to 10 days at a time, and thus unable to engage in any substantial activity.

The record discloses additional problems with plaintiff's ulcer which acts up every three weeks or so and may continue for another two or three weeks, causing plaintiff severe pain.

Additional detail as to plaintiff's maladies would only be cumulative in effect; the important point is the effect on his ability to engage in substantial gainful employment. The record indicates that if plaintiff stands for very long, his kidneys swell and he must return to the hospital. He can bend for no longer than 10 minutes and squat for no longer than 15 minutes without pain. He can sit for no longer than 30 or 40 minutes at a time, and driving is painful for him. He can lift no more than 12 or 15 pounds and cannot walk very far.

Because he cannot stand or lift, plaintiff cannot return to his printing job. Further, he is unfamiliar with the new process of offset printing which would make it more difficult for him to obtain a job even if he were physically able. Because he cannot exert himself, plaintiff is unable to return to his work as a general construction laborer.

At the alleged onset date of July, 1971, plaintiff was working construction, but

lost this job due to numerous subsequent hospitalizations. In December, 1971, he obtained a job at a feed lot and worked a week, but was again hospitalized with a kidney attack. Then plaintiff attempted to sell insurance; however, due to his attacks and resulting hospitalizations, at least two employers have terminated his employment in that field. Plaintiff's wife testified that every time plaintiff gets a job he is required to go to the hospital for two weeks and has no job when released.

Recently, plaintiff applied for jobs as a plumber, at a service station, at a ceramic plant and at other industries, but was turned down for all because of his medical problems.

Plaintiff's problems, as indicated, have become more severe in recent years. The Veterans Administration Hospital report indicated that it is expected that plaintiff will continue to have difficulty with the passage of kidney stones. At the time of hearing, plaintiff apparently had 28 stones in his kidneys and plaintiff's wife testified that a doctor told her that if one of the stones interferes with the operation of the kidney, her husband will die.

In summary, plaintiff frequently passes kidney stones. When he does so he is either hospitalized or bedridden with pain. The medical expert who testified at the hearing stated that a person would be a "darned fool" to attempt to work while passing kidney stones because of the "severe pain."

■ In light of this evidence, it is impossible for this Court to conclude that any substantial evidence supports the Secretary's decision in this case. There is no reason to believe that this man can engage in substantial gainful activity.

Since the alleged onset date, plaintiff worked briefly at a number of jobs, losing them all due to his health. More recently, he was refused a chance to even attempt a number of jobs due to his health problems. There is no evidence in the record indicating that his situation is likely to do anything in the future but deteriorate.

As indicated earlier, the Secretary in this case had the burden to adduce evidence of job availability suitable to plaintiff's age, work experience, educational background and capacity. (*Jackson v. Secretary of Health, Education and Welfare,* 319 F.Supp. 385 (N.D. Ohio 1970)). This burden was not carried.

The testimony of the *medical expert* was largely supportive of plaintiff. His only testimony that would tend to indicate that plaintiff would be able to engage in substantial gainful activity was the statement that "Many people have kidney stones. Many people go about their every day business. Occasionally, they have an attack and they're put out of commission for a few days." and the statement that ". . . I see an awful lot of people with stones and they go about and do their usual work. Some of them do common labor, hard work, drive trucks, cabs. When they get in trouble they quit and yell for help."

These statements refer to people in general, not to this particular claimant. The only relevant evidence is evidence as to the disabling effect of the physical impairments upon the particular claimant. (*Prewitt v. Gardner,* 389 F.2d 993 (5th Cir. 1968); *Whitt v. Gardner,* 389 F.2d 906 (6th Cir. 1968)).

■ The *vocational expert* who testified did make the general statement that plaintiff could perform "light work". This is inadequate. (*Popovich v. Celebrezze,* 220 F.Supp. 205 (W.D.Pa.1963); *Davidson v. Gardner,* 370 F.2d 803 (6th Cir. 1966)). The vocational expert, when speaking of job availability, did little more than read a list of jobs from a catalogue. This is inadequate. "A claimant is 'not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment.'"

(*Celebrezze v. Warren*, 339 F.2d 833, 837 (10th Cir. 1964)).

However, these are basically trivial complaints. The major reason this Court disagrees with the Secretary's holdings is that the testimony of the vocational expert, when read in the proper perspective, clearly proves that claimant is *unable* to engage in substantial gainful activity. In response to a hypothetical question posed by the Administrative Judge, the vocational expert responded:

> . . . If he were holding a regular job for example and was hospitalized from one week to one month relatively frequently *it would be impossible for him to be regularly gainfully employed.* On the other hand, there's certainly reason to believe that during a six month period between hospitalizations the claimant could be employed in some of the jobs that I've described, but this would be strictly on a relatively temporary basis and when the claimant was re-hospitalized for a month the job probably would not be available to him when he returned. So it would seem to me that we're in a gray area here regarding his ability to be regularly gainfully employed. I know you want a specific answer from me and it would seem to me that *considering the progression of the situation, that is going from relatively infrequent to more and more frequent hospitalizations with this, it would be rather doubtful that he would be employed on a regular basis at this point.* In spite of this fact, I might add that I think he could very successfully perform the jobs that I have previously described. (emphasis added)

In essence, the vocational expert stated that while plaintiff could perform certain light work jobs *while he was well,* he could never hold a job due to the necessity of frequent absences from work. In fact, the record shows that this particular plaintiff not only cannot hold a job, he cannot even obtain one.

The essential fact that claimant cannot get or hold a job is essentially ignored in the record of the proceedings below. The Administrative Judge, in response to plaintiff's question: "Yeah, but if a person can do all of these and nobody hired him, what good is it that he can do all of these?" stated: "Well, you have a good point, but the law says that employability is not a question as such."

■ This Court disagrees. Employability may not be a question "as such," but it is a relevant consideration to the extent that the phrase "substantial gainful activity" is not an abstract term but entails the concept of one's being able to perform a task under conditions that would be beneficial to an employer. If the claimant could perform the job of toy assembler for only one day out of thirty and was disabled the other 29 days due to kidney stones, it would be ludicrous to argue that plaintiff was capable of engaging in "substantial gainful activity." Yet, in terms of being able to obtain a job, plaintiff is in just as untenable a position under the record of this case as he is under the hypothetical situation.

■ Being able to perform a job entails the concept of regularity. The Secretary has only shown that plaintiff can work on an intermittent basis. The "ability to work only a few hours a day or to work on an intermittent basis is not ability to engage in a substantial gainful activity; the latter term means performance of substantial services with reasonable regularity in some competitive employment or self-employment." (*Rivas v. Weinberger,* 475 F.2d 255 (5th Cir. 1973); *Prevette v. Richardson,* 316 F. Supp. 144 (D.S.C.1970)). In the case of *Randall v. Flemming,* 192 F.Supp. 111 (W.D.Mich.1961) an analogous phrase in the old War Risks Claims Act was cited as being relevant to the phrase at hand, and as implying "ability to work at it all the time." In short, "gainful activity must be continuous" (*Campbell v. Flemming,* 192 F.Supp. 62, 63 (W.D.Ky. 1961)).

In *Montgomery v. Richardson,* 340 F. Supp. 591 (W.D.Va.1972), claimant suf-

fered from liver ailments and was in a situation roughly similar to plaintiff's in this case. Montgomery had engaged in odd jobs, but was forced to quit each one due to pain. The court held: "Taken together, his sporadic work activity does not demonstrate his ability to engage in substantial gainful activity during the crucial period. See 20 CFR § 404.1534 (a)." (340 F.Supp. at 594.)

In *Hall v. Celebrezze*, 314 F.2d 686 (6th Cir. 1963), the claimant also had kidney problems and a history of hospitalization and visits to the doctor roughly similar to those of the plaintiff here. The court said that "it was not necessary that Hall be bedridden or wholly helpless in order to establish his claim for benefits." (314 F.2d at 690).

In *Burrell v. Finch*, 308 F.Supp. 264 (D.Kan.1969), it was held that it "is not necessary that plaintiff be bed-ridden to come within the statute's provision. Neither is she required to sell apples. She is not required to meet every remote possibility which may be conjured up . . ." (308 F.Supp. at 266).

█ In the case at hand, the Secretary has conjured up a series of employers who will blithely hire plaintiff, while knowing that he might not last more than a few days on the job and almost certainly will not last a month. The question must be looked at in a practical manner and mere theoretical ability to engage in substantial gainful activity is not a sufficient basis to deny benefits. (*Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir. 1975)).

█ In opposition to plaintiff's motion for summary judgment, defendant suggests that the Secretary need not find a specific employer and job for plaintiff. This is true. However, the Secretary has not shown even one job that plaintiff could perform on anything more than a sporadic basis. The Secretary has not

shown that someone · with plaintiff's medical record could be hired for *any* job. The record shows that plaintiff's attempts to obtain a job have met with failure because his medical record shows an inability to do these jobs on a regular basis.

█ The defendant also suggests that the reluctance of employers to hire the handicapped is not a relevant consideration. This is also true, but refers to the reluctance of an employer to hire a handicapped person who *could perform* the job on a regular basis if hired. The Secretary has not adduced any evidence to show such a job exists anywhere for plaintiff. "A claimant's ability to work must be regular and substantial, actual and practical, before he may be said to be able to engage in substantial gainful activity." (*Paul v. Ribicoff*, 206 F. Supp. 606, 612 (D.Colo.1962))

Given the foregoing conclusions, it is unnecessary to examine the entirety of plaintiff's objections to the findings of the Secretary. This Court finds that there is no substantial evidence which a reasonable mind might accept as adequate to support a denial in this case. The plaintiff's motion for summary judgment is granted. The defendant's motion for summary judgment is denied. The decision of the Secretary is reversed and the case is remanded to the Secretary with directions that the plaintiff be granted a period of disability and the disability insurance benefits to which he is entitled.

Pursuant to 42 U.S.C. § 406(b)(1) a fee is allowed the plaintiff's attorneys, Hampton, Royce, Engleman & Nelson, in an amount equalling 25% of the total past due benefits allowed and not otherwise paid; this fee shall be reflected as part of the judgment.

It is so ordered.