**Glyn Dean ALBERTSON, Plaintiff,**

v.

**Joseph A. CALIFANO, Secretary of Health, Education & Welfare, Defendant.**

**No. 77–1452.**

United States District Court, D. Kansas.

July 11, 1978.

---

3. Such was, in fact, the case in this instance.

Richard D. Cordry of Michaud, Cranmer, Syrios & Post, Wichita, Kan., for plaintiff.

Jon K. Sargent, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, District Judge.

Plaintiff brings this action to seek judicial review of the Secretary's decision that he is no longer entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. The denial of further benefits is the "final decision" of the Secretary and therefore this Court may undertake a limited review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On December 12, 1975, plaintiff filed an application to establish a period of disability and to obtain disability insurance benefits, 42 U.S.C. §§ 416(i) and 423. He also filed an application for supplemental security income benefits, 42 U.S.C. § 1381a. The application received consideration by the Social Security Administration and the claim was allowed, with onset of disability established as of December 1975 and benefits payable beginning June 1976.

On March 17, 1977, the Social Security Administration notified plaintiff that, based on medical evidence, it was determined that his condition had improved to the extent that he was able to perform substantial gainful work in December 1976. Accordingly, the last disability check to which he was entitled was for the month of February 1977.

On June 15, 1977, at plaintiff's request, a hearing was held, at which he and a vocational expert, Bentley Barnabas, appeared and testified. Plaintiff was represented by counsel at the hearing. On July 25, 1977, the Administrative Law Judge [ALJ] made a determination. He found that beginning December 31, 1976, plaintiff's impairments were improved, and beginning January 1, 1977, plaintiff had the functional capacity to perform light and sedentary work activities not in a noisy or confusion [sic] environment. Therefore, plaintiff was no longer entitled to a period of disability, disability insurance benefits, or supplemental security income. On December 11, 1977, the Appeals Council of the Social Security Administration, which had been briefed by plaintiff's counsel, affirmed the hearing determination. Thus, the determination of the ALJ stands as the final decision of the Secretary.

This action was filed November 14, 1977. Plaintiff asserts that there is no substantial evidence to support the Secretary's decisions that plaintiff's disability terminated after December 31, 1976 and that plaintiff could engage in substantial gainful activity. Plaintiff also asserts that the Secretary failed to establish by sufficient evidence the type of substantial gainful activity which he may physically be able to engage in, and that the mere theoretical ability to engage in substantial gainful activity is not a sufficient basis for a denial of insurance benefits.

The matter is before the Court on cross motions for summary judgment. The parties are agreed that the motions may be decided on the pleadings currently on file in

this action and the certified transcript of the record of proceedings relating to plaintiff's claim. For reasons stated herein, we grant defendant's motion for summary judgment.

Plaintiff's application for disability insurance benefits states that he was born December 4, 1940, and that he became disabled on December 6, 1975, at the age of 35, because of numerous injuries and brain damage caused by an automobile accident. Plaintiff's injuries from the automobile accident included a severe head injury resulting from numerous fractures of the skull, contusions of the brain and loss of some brain matter, multiple fractured ribs, and lacerations of the spleen resulting in a splenectomy. Permanent physical problems include blindness of the left eye, a hearing deficit, and non-psychotic organic brain syndrome. The Cessation or Continuance Disability Determination and Transmittal, March 16, 1977, noted these problems, but also noted that plaintiff had normal vision in the right eye with correction to 20/20, and that his hearing impairment was not felt to be disabling because he could understand normal conversation. A recent work evaluation, said the report, revealed plaintiff's work habits to be consistent with those of competitive employment. It was concluded that plaintiff no longer suffered from impairments which would prevent him from engaging in the competitive labor market. (Tr. 97–98).

Plaintiff was admitted and treated by Dr. Larry VinZant, a specialist in neurological and general surgery. A letter dated December 20, 1975, from Dr. VinZant, describes plaintiff's injuries and states that "he will probably be disabled for a long period of time and will most likely end up with some permanent disability." (Tr. 145). A telephone report of progress, February 6, 1976, states that in Dr. VinZant's opinion, plaintiff's disability would last at least a year from the onset. Dr. VinZant stated that plaintiff was making some slow improvement but would probably have considerable permanent impairment. (Tr. 146). On March 23, 1976, Dr. VinZant stated plaintiff's prognosis was poor. (Tr. 147).

Plaintiff was seen by F. C. Newsom, M.D., on March 22, 1976, for a psychiatric interview. Dr. Newsom recommended psychological testing and psychiatric diagnosis was non-psychotic OBS (organic brain syndrome) with brain trauma. (Tr. 150). A report of psychological testing performed by John R. Lester, Ph.D., states that plaintiff was functioning in the average range of intelligence. However, his abilities were unequally balanced in that he obtained the low average range on the verbal scale and the bright normal level on the performance items. (Tr. 131). Dr. VinZant saw plaintiff again on June 8, 1976. He reported that plaintiff was much improved. He could hear about a third as well on the left as on the right, but Dr. VinZant did not feel this was a major disability. He had blindness in the left eye and a scotoma (blind spot) in the right eye, but was driving a car and was able to read. He had some pain and stiffness in the back, but it was improving. Dr. VinZant stated that he believed it was time that plaintiff be considered for employment and rehabilitation. (Tr. 152).

In a letter dated August 16, 1976, Dr. Norton L. Francis reported on plaintiff's hearing loss. Dr. Francis stated that plaintiff had a hearing loss of 50 decibels in the left ear and 20 decibels in the right ear in the speech range. Dr. Francis had little hope that plaintiff's left ear would improve, but stated that with the hearing in his right ear, plaintiff should not suffer too much handicap. (Tr. 153). Ronald D. Chambers, a consulting speech pathologist, in a letter September 9, 1976, stated that plaintiff had a certain "flatness" or reduction of emotional expression that Chambers had observed in other head-trauma patients. Chambers felt plaintiff was an excellent candidate for rehabilitation but would require considerably more attention than one would expect. (Tr. 154). Chambers also reported that plaintiff had some difficulties comprehending conversation in groups or situations where sounds competed, that he had a mild aphasia, mild memory deficiency, and difficulty with concentration. (Tr. 155–157). A psychological report by Larry

A. Boll, Ph.D., November 4, 1976, described plaintiff as an extremely immature and socially isolated individual, plagued by chronic and severe feelings of insecurity, inferiority, and inadequacy. Dr. Boll said he had no knowledge as to plaintiff's mechanical ability, but that he did manifest quite adequate perceptual-motor organization and coordination skills. Dr. Boll said plaintiff undoubtedly suffers physical complications, but believes that plaintiff manifested some hypochondrial tendencies. Dr. Boll questioned whether plaintiff was an appropriate candidate for job placement at that time and recommended a work evaluation setting to acquaint him with vocational options. (Tr. 158–163).

On December 6, 1976, plaintiff began a two week work sample evaluation. His physical impairments—loss of sight in left eye, severe hearing loss in left ear and partial loss in right ear, and residuals of brain damage—were noted. He had good back motion without much pain, but some pain on bending forward and lifting. The medical staff recommended that he perform daily Williams' flexion exercises to strengthen back muscles, wear glasses, and continue with a neurologist in Wichita. In a work situation, he should avoid work that requires two good eyes and good hearing, and also avoid working in a noisy environment to avoid further hearing loss. His work habits were found to be consistent with those of competitive employment. It was felt he had the abilities and the potential to learn the drafting profession, though he might have some problems. Plaintiff displayed good use and knowledge of hand tools, excellent manual and finger dexterity, and his motor coordination was above average. Plaintiff's major limitation was stated to be lack of self-confidence. (Tr. 164–167, 179–181).

In a report, March 21, 1977 (Tr. 168), Dr. VinZant stated:

Mr. Albertson has continued to improve and seems to be thinking better.

He has permanent disability as far as hearing and seeing are concerned. He is blind on the left side and has a blind spot on the right. He is not able to think at top levels and not able to remember as well as before the accident.

Plaintiff was examined by V. Dean Schwartz, M.D., on April 4, 1977. Dr. Schwartz summarized plaintiff's injuries, and said that most of the disability he now displays is permanent. Dr. Schwartz noted that plaintiff suffered a lack of recognition of ordinary printed words, as well as a nominal aphasia (inability to name a given item), and that he had memory loss. Dr. Schwartz opined that he was sure there are occupations for which plaintiff may be suited, but such occupations would not involve very extensive ideation or original thinking. (Tr. 193–194).

Plaintiff testified at the hearing that he had a high school education and had spent several years employed in the aircraft industry doing sheet metal and sheet metal inspection work. For a year and a half prior to the accident, he owned and operated a janitorial business, but had to sell it after the accident. He said he had problems with his back that would prevent him from returning to his janitorial business, since he has pain when he lifts things. He also has pain when he sits in a hard chair. He can read, but it takes longer, and he can drive. His hearing loss makes it difficult for him to concentrate if a lot of people are talking at once, noise makes him nervous and bothers him, and he has problems with nervousness that he did not have before. He has no restrictions on walking, and no trouble with his arms, legs, or neck or with his internal injuries.

The vocational expert, Bentley Barnabas, testified that for a person in plaintiff's position, with physical impairments of a loss of his left eye, reduced hearing in his right ear, back trouble of sufficient seriousness that it interferes with him being able to work at more than a moderate to light and sedentary level, who must work in an atmosphere that is not unusually confusing and noisy, that possible jobs were an estimator who figures labor and material costs from plans and blueprints, light assembly jobs, light stamping jobs, and over-the-counter

sales of automobile parts. Barnabas stated that all these jobs existed in the Wichita area. (The ALJ rejected Barnabas' opinion that plaintiff could be an estimator, expressing the view that plaintiff lacked the necessary experience.) Plaintiff's counsel asked Barnabas a hypothetical which listed plaintiff's impairments, his education and vocational background, and assumed that he cannot lift weights above 25 pounds, has problems sitting for any length of time in a hard chair, and has psychological problems with noisy and confusing situations and with dealing with people in stressful situations. In response, Barnabas stated that with such a long list he would say plaintiff is disabled.

In his evaluation of the evidence, the ALJ stated that the specific medical findings confirm the sensory impairments complained of by plaintiff, but that there is a little specific medical evidence to support his claim that his back injury prevented him from performing all types of substantial gainful activity. The ALJ also noted the evidence of Drs. Boll and Schwartz as to mental disabilities. The ALJ found the following:

1. The claimant was found to be disabled within the meaning of the Social Security Act beginning December 12, 1975.

2. The claimant's impairments were organic brain syndrome and skull fracture.

3. The medical evidence shows that beginning December 31, 1976, the claimant's impairments improved.

4. Beginning January 1, 1977, the claimant had the functional capacity to perform light and sedentary work activities not in a noisy or confusion [sic] environment.

5. Within the limits of his impairments and considering his age, education and vocational experience, the claimant could perform light assembly or

stamping jobs which exist in significant numbers within the region where he lives.

6. Considering the claimant's age, education, work experience, and improved functional capacity, he had the ability to engage in substantial gainful activity beginning January 1, 1977.

7. Entitlement to a period of disability and to disability insurance benefits ended with the close of February, 1977, two months after his disability ceased.

\*    \*    \*    \*    \*    \*

The requirements for a disability determination are statutorily created and are not in dispute. 42 U.S.C. §§ 416(i), 423, 1382c.

■ It is well settled that in reviewing a social security case of this kind, a court is not authorized to re-weigh the evidence; its limited function is to determine whether the Secretary's findings of fact are supported by substantial evidence and the inferences drawn therefrom are reasonable.[1] *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Trujillo v. Richardson,* 429 F.2d 1149 (10th Cir. 1970). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the Secretary's conclusion. *Richardson v. Perales, supra; Johnson v. Finch,* 437 F.2d 1321 (10th Cir. 1971). The claimant has the burden of proving some medically determinable impairment which prevents him from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1) and (3); *Lucas v. Richardson,* 348 F.Supp. 1156 (D.Kan.1972). The question is not whether the claimant is unable to return to his previous work, but rather whether considering his age, education, and work experience, he is unable to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Relevant evidence includes objective medical

---

1. As to the claim for supplemental security income benefits, this Court is precluded from reviewing the facts. The decision of the Secretary as to any question of fact is final and nonreviewable as to plaintiff's eligibility for supplemental security income benefits. 42 U.S.C. § 1383(c)(3).

facts, expert medical opinion, subjective evidence of pain and disability, and claimant's present age, educational background and work history. *Keef v. Weinberger*, 404 F.Supp. 1193 (D.Kan.1975). A statement by a physician that an individual is or is not disabled and unable to work is a conclusion upon the ultimate issue to be decided by the Secretary, and is not determinative of the question of whether the claimant is disabled. The weight to be given such a statement depends on the extent to which it is supported by scientific and complete medical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment. 20 C.F.R. § 404.1526; *Lucas v. Richardson, supra.*

■ We find that there is substantial evidence to support the Secretary's decision that plaintiff is no longer entitled to a period of disability and is capable of substantial gainful activity. As plaintiff points out, there is a two-pronged test: (1) whether he has a medically determinable impairment (2) which prevents him from engaging in any substantial gainful activity. *Mitchell v. Weinberger*, 404 F.Supp. 1213 (D.Kan.1975). Such an impairment may be either physical or mental. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues that the Secretary ignored his medically determinable physical and mental impairments, including the mental impairments testified to by Drs. Boll and Schwartz. We disagree. The ALJ noted this testimony in his evaluation of the evidence at the hearing, did not question its accuracy, and specifically found that plaintiff could not work in a noisy or confusing environment, which was the recommendation made after plaintiff's vocational sample. (Tr. 165). This finding is consistent with the medical testimony of plaintiff's organic brain syndrome. Furthermore, the weight of the medical and vocational evidence was that although plaintiff suffers physical and mental impairments, these are not severe enough to make him incapable of substantial gainful activity. There is no medical testimony that plaintiff is incapable of employment. On the contrary, Drs. VinZant and Schwartz opined that plaintiff was capable of employment. Dr. Francis said his hearing loss was not a serious handicap, and Dr. Boll recommended a vocational setting to acquaint plaintiff with job options. There was evidence, including plaintiff's testimony, that his back problems will prevent him from performing heavy work, such as his previous janitorial work. The ALJ recognized these problems, and found that plaintiff is limited to light and sedentary work.

■ Plaintiff, however, attacks the finding that he is capable of substantial gainful activity as merely theoretical. He points to the testimony of Bentley Barnabas. We note first that plaintiff has no basis to attack Barnabas' testimony that he could be an estimator, since the ALJ rejected this testimony and made no finding as to it. Plaintiff also argues that Barnabas, in response to a hypothetical posed by plaintiff's counsel, stated his opinion that with those problems, plaintiff was disabled. Such an opinion does not require the reversal of the Secretary's decision. It is not binding on the Secretary. There is other vocational evidence supporting the Secretary's decision that plaintiff is not disabled within the meaning of the Act. Finally plaintiff argues that no one would hire him with his impairments. We are statutorily precluded from considering this; the Act looks to whether plaintiff is capable of substantial gainful activity, and is not concerned with "whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The Secretary's finding that Albertson was not disabled after December 31, 1976, from engaging in substantial gainful activity will be affirmed.

IT IS THEREFORE ORDERED that the Secretary's motion for summary judgment be, and it is hereby, granted.