**Otha LUCAS, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. A. No. W–4744.**

United States District Court,
D. Kansas.

Aug. 3, 1972.

Wilbur D. Geeding, Wichita, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., Richard Oxandale, Asst. U. S. Atty., Wichita, Kan., and Paul P. Cacioppo, Reg. VII Atty., HEW, Kansas City, Mo., for defendant.

MEMORANDUM OF OPINION
FINDINGS OF FACT AND CONCLU-
SIONS OF LAW

WESLEY E. BROWN, Chief Judge.

This is an action to review the final decision of the Secretary of Health, Education and Welfare, denying disability insurance benefits to the plaintiff. Ju-

risdiction rests in 42 U.S.C. § 405(g). All procedural requisites have been complied with. Lucas has been represented by counsel in all phases of this matter.

Lucas filed for disability benefits on May 4, 1970, alleging that he became unable to work on September 5, 1969 due to lung trouble, emphysema, and heart disease. On September 9, 1970, Lucas was notified that his application had been denied. He filed for reconsideration on September 14, 1970, and was notified on February 4, 1971, of the affirmation of the original denial.

On March 1, 1971, Lucas requested a hearing, stating

"I have tried to find employment numerous times, and each time I was turned down for insurance reasons (due to my disability). Also I can't stay on my feet long and I fall easily."

The hearing was held on April 7, 1971.

The case is now before us on cross motions for summary judgment. The Court stands advised of the parties' positions by briefs, and by the record of the hearing examiner.

## FINDINGS OF FACT

The facts as found by the hearing examiner are not in dispute. The plaintiff is a 62-year old man who presently resides in the small rural community of Fall River, Kansas. He lives alone in a three-room house. He is not employed.

Lucas attended school through the eighth grade, and thereafter was a tenant farmer until 1956. At that time, he went to work for the Carthage Marble Company where he operated a marble saw. After about five months at the marble company, he went to work for the Beech Aircraft Corporation where he did metal fabrication work. He was laid off after five months at Beech, and thereafter took a job with the Cessna Aircraft Corporation, where he operated a spinning lathe. Lucas worked at Cessna for ten years, 8 months, until he was laid off in December, 1968. Thereafter, in May, 1969, he went to work for Lear Jet, where he again did metal fabrication

work. He was terminated by Lear in September, 1969, when it was disclosed that he had falsified his work application regarding his physical condition. He has not worked since September, 1969, although he has applied for jobs at Lear, Beech and Boeing, as well as a few small machine shops in the area. Lucas told the hearing examiner that his physical condition made him ineligible for the insurance programs at these companies.

Inextricably intertwined with Lucas' past work history and his present alleged inability to secure a job is his past and present medical history. His position is that lung, heart, back and leg problems make it impossible for him to do the very limited types of work for which he possesses the requisite skills: farming and metal fabrication.

The hearing examiner considered the following objective medical evidence at the hearing held April 7, 1971:

May 11, 1967: Lucas was admitted to St. Francis Hospital, Wichita, Kansas complaining of pain in the chest and upper abdomen for the past 10 days. Discharged May 16, 1967, as "improved"; diagnosis: Sinusitis and gastritis. Gastric volvulous. Emphysema.

October 23, 1967: Lucas admitted to St. Francis complaining of a sudden attack of pain through the entire chest; choked up. Discharged October 27, 1967 as "improved"; diagnosis: Angina pectoris.

December 11, 1967: Lucas admitted to St. Francis complaining of difficulty in breathing and shortness of breath with some related chest pain. Previous "possible cardiac complications which were never proven" were noted. Discharged on December 17, 1967 as "improved"; diagnosis: Bronchitis with emphysema.

November 18, 1968: Lucas admitted to St. Francis complaining of severe pain and some bleeding when urinating. Discharged on November 23, 1968, as "improved"; diagnosis: Acute pyelitis. Emphysema.

March 25, 1970: Lucas admitted to St. Francis complaining of chest pain. Discharged on March 27, 1968, as "improved"; diagnosis: acute sinusitus with pharyngitis with bronchitis and emphysema. Mild gastritis.

May 5, 1970: Lucas examined by Dr. Podrebarac, complaining of difficult breathing on exertion for the past 2 or 3 years. Diagnosis: emphysema with some arteriosclerosic heart disease.

June 22, 1970: Lucas admitted to Greenwood County Hospital, Eureka, Kansas, on the orders of C. D. Baird, M.D. He was placed in traction until July 16 because of siatic neuritis in the left leg resulting from a herniated disc. When he did not improve, he was transferred to St. Francis.

July 29, 1970: Dr. Warren performs transurethral resection for a benign prostatic hypertrophy.

August 7, 1970: Dr. Rawcliffe performs laminectomy and foraminotomy and removes an extruded intervertebral disc. Dr. Rawcliffe describes Lucas' postoperative recovery as "generally benign". He was discharged on August 20, 1970.

August 21, 1970: Lucas admitted to the Greenwood County Hospital for convalescence. Discharged August 27, 1970.

November 2, 1970: Lucas examined by Dr. Rawcliffe, who reported that Lucas was getting along reasonably well; that Lucas denied actual pain in his back except for some mild stiffness and dull ache. Lucas denied pain in his leg, but stated that it became dead or asleep after walking a city block. Dr. Rawcliffe's examination revealed a normal standing posture and a normal range of spine motion for an individual of Lucas' age and build. The ¼ inch atrophy of the left calf was still present as noted prior to surgery. Dr. Rawcliffe felt that Lucas had made an "excellent recovery" and that no followup was necessary. He estimated Lucas' permanent partial impairment at 15%.

April 6, 1971: Dr. Baird reports that he has seen Lucas five times since August 27, 1970. Dr. Baird diagnosed that Lucas was suffering from emphysema and arteriosclerotic heart disease. Lucas complained of numbness in leg and difficulty in urinating.

May 1, 1971: Dr. Baird states that Lucas has any one of four conditions which "probably would prevent him from doing hard manual labor and the combination of his ailments most likely makes him unfit for any job." Dr. Baird named the four ailments as follows: (1) emphysema, (2) arteriosclerotic heart disease, (3) unstable back, (4) chronic alcoholism.

In addition, Lucas told the hearing examiner, in some detail, about his physical ailments and how they affected his life. He stated that his shortness of breath, chest pains, instability of his leg, back pain and other physical problems combined to keep him confined to his home, where he listens to the radio. He stated that he cooks for himself and was able to do a minimum of housework. He does not visit the neighbors or drive a car (the record reflects that Lucas was convicted for drunken driving and having an open bottle sometime prior to December, 1968, and that his license was revoked).

The hearing examiner, in reviewing the evidence, found in pertinent part that:

"In short, the evidence does not show that the claimant was seriously impaired because of any cardiac or pulmonary condition. If the claimant had had a cardiac infarction, the evidence shows that he has recovered from such cardiac embarrassment and has worked at least several years after such an attack.

"The latest medical evidence does not show that the claimant is impaired seriously by either a cardiac or pulmonary dysfunction.

\* \* \* \* \* \*

" . . . the report of the operating surgeon shows that the claimant's surgery was substantially successful and left him with only 15 per cent disability.

"In summary, the claimant had a ruptured vertebral disc, which was substantially repaired by surgery, and he has mild emphysema and no significant cardiac impairment. Although his handicaps are complicated by some alcoholism, nevertheless, the evidence does not establish that the claimant was so severely impaired that he is unable to engage in all forms of substantial gainful activity.

"In short, the Hearing Examiner is unable on this record to find that the claimant has impairments, either physical or mental, which are of sufficient severity to prevent him from engaging in substantial gainful work. This is borne out by the fact that the claimant, despite these handicaps, has engaged in substantial work for several years, and it is indicated that he lost many of his jobs because of his personal habits and absenteeism. The claimant, in fact, testified that he was able recently to successfully perform work at Lear Jet, and was terminated only when it was discovered he had not listed a pulmonary condition on his application.

## FINDINGS

"Based on the foregoing and in view of all the evidence of record, it is the finding of the Hearing Examiner that the claimant has not been prevented from engaging in substantial gainful activity by reason of medically determinable physical and/or medical impairment, or combination of impairments, which have lasted or can be expected to last for a continuous period of not less than 12 months."

The decision of the hearing examiner was filed on June 24, 1971. Lucas filed his notice of appeal from the decision on July 8, 1971. The Appeals Council affirmed the decision of the Hearing Examiner on October 4, 1971. The present action was filed December 3, 1971.

## CONCLUSIONS OF LAW

■ Our scope of review of the final decision of the Secretary is quite limited. The sole issue for the Court's determination is whether there is "substantial evidence" to support the Secretary's decision that Lucas is not entitled to benefits under 42 U.S.C. §§ 216(i) and 223 because he does not suffer from a disability which can be expected to last for a continuous period in excess of not less than 12 months which has prevented him from engaging in substantial gainful activity.

The question of what amounts to substantial evidence has been dealt with in the recent case of Branch v. Finch, 313 F.Supp. 337 (D.Kan., 1970) wherein Judge Templar stated:

"The [Circuit] Court pointed out in Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir., 1966), that findings of fact by the Secretary and the inferences drawn from such findings should not be disturbed by a reviewing court, if there is substantial evidence to support them. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' Stated in a different manner, the evidence must be such, if trial were to a jury, as would justify a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. If there is only a slight preponderance of evidence on one side or the other, the Secretary's findings should be affirmed."

"Disability" is defined under the Act as:

"Inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; (42 U.S.C. § 423(d)(1) (A))."

It is further stated under § 423(d) that:

"(2) . . . an individual . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\*      \*      \*      \*      \*      \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

"Substantial gainful activity" is defined in 20 C.F.R. § 404.1532(b) as follows:

"Substantial gainful activity refers to work activity that is both substantial and gainful. Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit (or intended for profit, whether or not a profit is realized) to the individual performing it or to the persons, if any, for whom it is performed, or of a nature generally performed for remuneration or profit. In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful, than that in which he was engaged before the onset of his impairment."

■ The burden of proving "disability" as defined in the Act rests with the plaintiff. 42 U.S.C. § 423(d)(5) provides:

"An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

■ The determination of the existence of a disability is a two-step process: (1) determination of a medically determinable physical impairment and (2) an inability to engage in substantial gainful employment caused by that impairment, Harris v. Richardson, 450 F.2d 1099 (CA 4, 1971). Lucas offered evidence of three basic medical impairments: lung, heart, and back/leg trouble. There is sufficient evidence on the record to support a finding that Lucas has suffered, to some extent, from all three of these problems for the requisite period, and we do not read the hearing examiner's findings as reaching a contrary conclusion. We read the examiner's findings as denying benefits for failure to meet requirement (2), supra.

The medical opinions with respect to the extent of Lucas' disability are conflicting. On the one hand, there is Dr. Baird's statement that any one of Lucas' four conditions would "probably" prevent him from doing any hard manual labor and that the combination of the four "most likely" makes him unfit for any job. On the other, there is Dr. Rawcliffe's estimate that Lucas' permanent partial disability resulting from his back

surgery is 15%. There were no other specific medical findings with respect to the extent of Lucas' disability.

The weight to be given medical opinions of extent of disability is set forth in 20 C.F.R. § 404.1526 as follows:

"The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, 'disabled,' 'permanently disabled,' 'totally disabled,' 'totally and permanently disabled,' 'unable to work,' or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such a physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments."

■ It is not our function to weigh Dr. Baird's "probable 100% disability" estimate against Dr. Rawcliffe's "15% permanent partial disability" estimate for the purpose of determining whether, *in our opinion*, the claim should be granted. This is the function of the Secretary, Mayhue v. Gardner, 294 F. Supp. 853 (D.Kan.1968), aff'd 416 F.2d 1257 (CA 10, 1969).

■ Nor are we bound by Lucas' statement concerning the pain and difficulty he experiences in trying to get around. "Subjective symptoms must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment." Dvorak v. Celebrezze, 345 F.2d 894 (CA 10, 1965).

This leaves Lucas' statements that he cannot go back to work in the aircraft industry because he cannot meet the insurance requirements, and that he has been unable to find other work for which he is qualified (e. g., in small machine shops). Lucas did not state whether he had attempted to secure farm work, but it is a reasonable inference to be drawn from his statement that he has neighbor boys mow his lawn, that he has made no efforts to seek such employment, and that he considers himself unable to do it.

■ Lucas' assertions with respect to his inability to secure or do the work for which he is qualified are uncontradicted. In Gardner v. Brian, 369 F.2d 443 (CA 10, 1966) the Court stated that such a showing operated to shift to the Secretary the burden of showing the reasonable availability of suitable positions in which a person of the claimant's qualifications could work. (Judges Breitenstein and Lewis dissented on this point). This ruling has had considerable support in other Circuits, see 22 ALR 3rd 440. However, we had occasion to re-examine the *Gardner* rule in light of the 1967 amendments of the Social Security Act (P.L. 90–248) and concluded that the legislative history of those amendments shows that the Secretary is not required to make an affirmative showing of the reasonable availability of suitable positions, Johnson v. Finch, 310 F.Supp. 1235 (1970). This case was affirmed, 437 F.2d 1321 (CA 10, 1971), but without specific comment upon the continued vitality of the *Gardner* rule. The Court did find that under the 1967 amendments, the burden of proving disability rests with the claimant under § 423(d)(5), which, as heretofore set out, includes under (d)(2) a determination that a disability shall exist "only if" it is shown that a person of his qualifications is unable to perform "any other substantial gainful work . . . ." Thus, it is arguable that § 423(d)(2) and (d)(5), when read together, place on the claimant the affirmative burden of establishing the unavailability of other work as part of his claim. If such is the case, Lucas has not met his burden. In any event, however, we shall adhere to our previously expressed view that the burden does not shift to the Secretary to show the availability of other work.

Upon this record, then, we find that there is "substantial evidence" as previously defined, to support the Secretary's finding that Lucas was not under such a disability that he was unable to engage in any "substantial gainful activity."

The Secretary's finding that Lucas was not disabled from engaging in substantial gainful employment will be affirmed and his motion for summary judgment will be sustained.