Clarence D. McCLAFLIN, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. No. 77–1282.

United States District Court,
D. Kansas.

Feb. 27, 1978.

Richard H. Ebersole, Mulvane, Kan., for plaintiff.

James Buchele, U. S. Atty., Topeka, Kan., Jon K. Sargent, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

**WESLEY E. BROWN, Judge.**

Plaintiff brings this action to seek judicial review of the partial denial of his two claims for benefits; one for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.; the other for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. The denials are the "final decisions" of the Secretary and therefore this Court may undertake a limited review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On May 28, 1975, plaintiff filed an application (Tr. 87–90) to establish a period of disability and to obtain disability insurance benefits, 42 U.S.C. §§ 416(i) and 423. The application received consideration and reconsideration by the Social Security Administration (Tr. 93–94, 98–99) and the claim was denied.

On January 28, 1976, plaintiff filed an application for supplemental security income disability benefits, 42 U.S.C. § 1381a. This application was also denied on reconsideration, May 7, 1976.

On September 29, 1976, at plaintiff's request, a hearing was held, at which he and a vocational expert, Floyd W. Jack Tate, appeared and testified. Plaintiff was represented by counsel at the hearing. On October 1, 1976, the Administrative Law Judge (ALJ) made a determination. He found that plaintiff had been under a "disability" as defined in the Social Security Act, as amended, continuously from January 8, 1975, through September 27, 1976, but not thereafter. It was the determination of the ALJ that plaintiff was entitled to a period of disability, disability insurance benefits,[1] and supplemental security income. On May 19, 1977, the Appeals Council of the Social Security Administration affirmed the hearing determination. (Tr. 4) Thus, the determination of the ALJ stands as the final decision of the Secretary. This action was filed July 22, 1977. Plaintiff asserts that there is no substantial evidence to support the Secretary that plaintiff's disability terminated after September 27, 1976.

Defendant has filed a motion for summary judgment. The parties, through counsel, have waived oral argument on the motion. (Dkt. 10, 11) For reasons stated herein, we grant the motion.

The facts as outlined in defendant's brief are not in dispute, although plaintiff has added and highlighted certain facts in his brief.[2] In summary, the facts indicate that plaintiff has worked primarily as an automobile body and fender repairman, and also worked as a die finisher at Boeing in 1974. He states that he last worked on January 8, 1975, when he was employed at Boeing; and also that against the advice of his family physician, Dr. Leslie Cobb, he attempted to return to work one day in October, 1975, but was only able to work for four hours. Plaintiff states that he is unable to work due to aneurysm surgery, ulcer, hiatal hernia, enlarged prostate, back pain, arthritis, numb fingers, poor circulation in his legs, and headaches.

---

**1.** By the ruling of the ALJ, plaintiff was entitled to receive disability insurance payments through the month of November, 1976, two months after the disability ceased.

**2.** These additions and corrections consist primarily of interpretations of medical testimony in a way favorable to plaintiff, and have been taken into consideration in this summary.

Plaintiff was hospitalized four times and had two operations during the period in which the Secretary found disability (January 8, 1975 through September 27, 1976). In January, 1975, he was hospitalized, with a diagnosis of prostatic hypertrophy (enlarged prostate). A hiatal hernia and duodenitis (inflammation of the duodenum) were also diagnosed. (Tr. 138–149) In April, 1975, plaintiff was diagnosed as having an abdominal aortic aneurysm, with a secondary diagnosis of prostatic enlargement, and underwent graft surgery for the aneurysm. Dr. Cobb's records of June 16, 1975 indicate that plaintiff had made a poor response to prostatic hypertrophy treatment and that surgery would be necessary, but that treatment of the hiatal hernia had resulted in relief of symptoms. (Tr. 160) As to the vascular surgery, a prognosis by Dr. Dillis Hart, June 17, 1975, was good. Dr. Hart further stated that plaintiff should have very little limitation as far as the graft was concerned, and that he would be advised to be involved in physical activity. (Tr. 165–66).

Plaintiff was hospitalized again in December, 1975, and underwent removal of the gallbladder. Plaintiff's medical history, apparently taken when he entered the hospital in December (Tr. 169), indicates that there was slight limitation of mobility of the neck due to arthritis and limitation of motion in the back, but no swelling in the joints. In a letter to plaintiff's counsel dated January 23, 1976, Dr. Hart indicated that plaintiff demonstrated some evidence of radiculitis (inflammation of the root of a spinal nerve), which was probably associated with a systemic arthritis disorder. He noted that plaintiff tolerated the vascular surgery, but that pain in the lumbosacraliliac area (loins and hips) had not been completely alleviated. At the time, plaintiff was recovering from gallbladder surgery. Dr. Hart concluded that plaintiff would not be physically capable of gainful employment for an indefinite period of time. He stated that "hopefully re-evaluation in approximately 12 months would find him in a satisfactory physical state for re-employment." (Tr. 177–78) There is no indication in the record that Dr. Hart made such a re-evaluation.

A report of contact with Dr. Leslie Cobb by the Appeals Council, dated April 21, 1976, indicates that plaintiff was a borderline diabetic, that he had hypertension that was controlled by medication, and that he had some prostate hypertrophy. Dr. Cobb further said that plaintiff had some osteoarthritis due to a disc degeneration in the lumbar area, and commented that the plaintiff had a good range of motion, but did have pain and discomfort and had been told he would have to adjust to it. His last EKG indicated arteriosclerosis with left ventricular hypertrophy. Dr. Cobb also stated that in spite of all these findings he still felt that the plaintiff was not disabled for work and that if he could be trained he should be able to do moderate or at least light and sedentary work. (Tr. 179).

An orthopedic surgeon, Dr. Dennis Finley, examined plaintiff on April 30, 1976, at the request of defendant. Dr. Finley's report covers only orthopedic findings, not plaintiff's other conditions. Dr. Finley reported no definite tenderness in the lumbar spine. Range of motion was nearly within normal limits. X-rays show some mild degenerative changes in some lower facet joints, and possible spondylolysis (dissolution of a vertebrae) present at L5 on the right. Dr. Finley's diagnosis was minimal osteoarthritis of the lumbar spine. He stated he believed that the plaintiff was from an orthopedic standpoint able to perform a number of jobs in employment, but probably should not be involved in heavy lifting. (Tr. 181).

The plaintiff was hospitalized in the Wellington Hospital from June 27, 1976 until June 30, 1976, and was given a thorough examination. In a letter to plaintiff's counsel dated July 13, 1976, Dr. J. C. Hill reported the results of the examination. (Tr. 183–84) The medical opinion was that plaintiff had hypertension which was fairly well controlled by medication. He had a mild diabetes. There was some degenerative arthritis of the spine. An X-ray revealed an active duodenal ulcer. The opinion noted

the aneurysm repair, and stated that plaintiff had an advanced degree of arteriosclerotic changes for a man of 50. Dr. Hill closed by stating:

"These findings separately would not perhaps disable anyone, but when you add all of these and put them in the shell of one person, it is our opinion that he certainly is disabled and will have to have rehabilitation for a different type of occupation if he is to survive for any length of time."

Finally, a letter to plaintiff's counsel dated July 5, 1977, from Dr. Hill, indicates that plaintiff was re-examined for his disabilities on August 11, 1976 and June 28, 1977. (Ex. B, plaintiff's brief) Dr. Hill states: "It is our findings, as it was a year ago, that this man is totally disabled."

The above summary covers the medical testimony and opinion in this action. The record also indicates that plaintiff was advised April 12, 1976, by the State Division of Vocational Rehabilitation that he was ineligible for rehabilitation services because such services would not improve his present employability. (Tr. 198) Subsequently, in a letter dated August 4, 1976. John L. Graham, Vocational Rehabilitation Counselor, indicated to plaintiff's counsel that his previous "too severely disabled for rehabilitation" statement might not hold up in light of the agency's then-determination of no disability. (Ex. A, plaintiff's brief) There is no indication in the file that any further action was taken by the Division.

Plaintiff testified about his physical condition at the hearing of September 29, 1976, before the ALJ. He complained of prostatitis, and said it was a recurring problem, but that he did not take medication for it and was not sure what he would do about it. He stated that he still felt numbness, occasional pain, and had difficulty bending after the aneurysm operation, and that he believed the graft caused the circulation problems he had been having. He stated that his legs got numb and went to sleep if he stood for any length of time, though he could walk better than stand. He also complained of back pain from walking, bending,

lifting, and climbing stairs. He stated that the hiatal hernia was uncomfortable. In regards to the osteoarthritis, he stated that it troubled him in his back, neck, shoulders, and fingers, and that in his neck it gave him terrible headaches every day. He said that he had dizziness and blurred vision occasionally. He said he had some trouble with some condition every day.

The vocational expert, Floyd Tate, testified that for a person in plaintiff's position, with physical impairments limiting him from working in a standing position and limiting him to light or sedentary work, possible jobs were a self-service automobile gas station attendant or manager, a telephone dispatcher, a telephone sales person, or a key maker. Tate stated that all these jobs existed in the Wichita area. He further stated that blurred vision or dizziness would not impair plaintiff's ability to do these jobs, but that regular work would be required and that he doubted whether plaintiff would be hired for any of these jobs if he were to be absent one day a week because of health problems.

The ALJ found the following:

"1. The claimant stated he was born on April 26, 1926, completed nine years of schooling, and worked as an automobile repairman and aircraft employee.

2. The claimant met the special earnings requirements on January 8, 1975, the alleged date of disability onset, and continued to meet them through the date of this decision.

3. The claimant has musculoskeletal, digestive, genitourinary, cardiovascular, and endocrine system impairments.

4. The claimant was precluded from engaging in any substantial gainful activity on and after January 8, 1975, which condition continued through September 27, 1976, but not thereafter.

5. The claimant has been under a 'disability' as defined in the Social Security Act, as amended, continuously since January 8, 1975, through Sep-

tember 27, 1976, but not thereafter." (Tr. 10–11)

The requirements for a disability determination are statutorily created and are not in dispute. 42 U.S.C. §§ 416(i), 423, 1382c.

■ It is well settled that in reviewing a social security case of this kind, a court is not authorized to re-weigh the evidence; its limited function is to determine whether the Secretary's findings of fact are supported by substantial evidence and the inferences drawn therefrom are reasonable.[3] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Trujillo v. Richardson*, 429 F.2d 1149 (10th Cir. 1970). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the Secretary's conclusion. *Richardson v. Perales, supra;. Johnson v. Finch*, 437 F.2d 1321 (10th Cir. 1971). The claimant has the burden of proving some medically determinable impairment which prevents him from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1) and (3); *Lucas v. Richardson*, 348 F.Supp. 1156 (D.Kan.1972). The question is not whether the claimant is unable to return to his previous work, but rather whether considering his age, education, and work experience, he is unable to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Relevant evidence includes objective medical facts, expert medical opinion, subjective evidence of pain and disability, and claimant's present age, educational background and work history. *Keef v. Weinberger*, 404 F.Supp. 1193 (D.Kan.1975). A statement by a physician that an individual is or is not disabled and unable to work is a conclusion upon the ultimate issue to be decided by the Secretary, and is not determinative of the question of whether the claimant is disabled. The weight to be given such a statement depends on the extent to which it is supported by scientific and complete medi-

cal findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment. 20 C.F.R. § 404.1526; *Lucas v. Richardson, supra.*

■ This Court has examined the records and briefs and concludes that there is substantial evidence to support the Secretary's determination that the disability ended in September, 1976. We note that the medical opinion of Dr. Cobb, plaintiff's family physician, was that plaintiff was capable of gainful employment despite all his ailments, and that this statement was made in a period in which the Secretary found disability. We further note that medical opinion from Dr. Finley, though it concerned only plaintiff's osteoarthritic condition, indicated that plaintiff was capable of gainful employment. Dr. Hill's medical opinion was contrary, but the Secretary was not bound by it.

The Secretary's finding that McClaflin was not disabled after September 27, 1976, from engaging in substantial gainful employment will be affirmed.

IT IS THEREFORE ORDERED that the Secretary's motion for summary judgment be, and it is hereby, granted.

For clarification we have attached a glossary of medical terms

### GLOSSARY OF TERMS

| | |
|---|---|
| Hiatal Hernia: | Hernia up by the diaphragm. |
| Cystoscopy: | Examination of the urinary tract. |
| Prostatic hypertrophy: | Enlargement of the prostate. |
| Duodenitis: | Inflammation of the duodenum (small intestine). |
| Sclerosis: | Hardening. |
| Abdominal Aortic Aneurysm: | Sac formed by the filation of the walls of an artery or vein and filled with blood, in the aorta. |
| Lumbosacral: | Pertaining to the loins and sacrum (between hip bones). |
| Vascular surgery: | Of the vessels. |

**3.** As to the claim for supplemental security income benefits, this Court is precluded from reviewing the facts. The decision of the Secretary as to any question of fact is final and non-reviewable as to plaintiff's eligibility for supplemental security income benefits. 42 U.S.C. § 1383(c)(3).

Cholecystography: ...Gallbladder test.

Radiolucent calculi: ..Gallstones

Cholelithiasis: .......The presence or formation of gallstones.

Cholecystectomy: ....Removal of the gallbladder.

Cholangiogram: .....Test of gallbladder and bile ducts.

Cholecystitis: .......Inflammation of the gallbladder.

Hypertension: .......Abnormally high tension, especially high blood pressure.

Radiculitis: ........Inflammation of the root of a spinal nerve.

Lumbosacral-iliac: ...Pertaining to the hip bone.

Osteoarthritis: ......Chronic multiple degenerative joint disease.

Arteriosclerosis: .....Hardening of the arteries.

Laseque's signs: .....To do with movement of limb.

Spondylolysis: .......Dissolution of a vertebrae.

Paresthesia: ........Sensation of burning, prickling, creeping.