Johnny CRUMP, Plaintiff,

v.

Joseph CALIFANO, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 77–1223.

United States District Court, D. Kansas.

June 15, 1978.

James P. Johnston, Sowers & Johnston, Wichita, Kan., for plaintiff.

Jon K. Sargent, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, District Judge.

Plaintiff brings this action to seek judicial review of the partial denial of his claim for disability insurance benefits under Title II of the Social Security Act, as amended, 42 U.S.C. § 401 et seq. The denial is the "final decision" of the Secretary and therefore this Court may undertake a limited review under 42 U.S.C. § 405(g).

On August 6, 1976, plaintiff filed an application (Tr. 73–76) to establish a period of disability and to obtain disability insurance benefits, 42 U.S.C. §§ 416(i) and 423. The application received consideration and reconsideration by the Social Security Administration (Tr. 77–78, 80–81) and the claim was denied.

On January 11, 1977, at plaintiff's request, a hearing was held at which he and a vocational expert, Eudora Getz, appeared and testified. Plaintiff was represented by counsel at the hearing. On January 18, 1977, the Administrative Law Judge [ALJ] made a determination. (Tr. 15–21). He found that plaintiff had been under a disability as defined in the Social Security Act, as amended, continuously from August 11, 1975, through August 23, 1976, but not thereafter. It was the determination of the ALJ that plaintiff was entitled to a period of disability and entitlement to benefits until the end of October 1976. On May 25, 1977, after receipt of evidence in addition to that which was before the ALJ (Tr. 120), the Appeals Council of the Social Security Administration affirmed the hearing determination (Tr. 5). Thus, the determination of the ALJ stands as the final decision of the Secretary. This action was filed June 10, 1977. Plaintiff asserts that there is no substantial evidence to support the Secretary's decision that plaintiff's disability terminated after August 23, 1976.

The matter is before the Court on cross motions for summary judgment, the motions based on the pleadings currently on file in the action and the certified Transcript of the Record of Proceedings relating to plaintiff's claim. For reasons stated herein, we grant defendant's motion for summary judgment.

The facts are not in dispute. Plaintiff was born March 27, 1949. Plaintiff attended, but did not complete high school. He has worked as a dishwasher, maintenance man, bank security guard, stacker, loader, grinder, brake installer, and sampler for the Kansas State Grain Inspection Department. He alleges that he became unable to work on April 11, 1975, because of a back injury.

On April 30, 1975, plaintiff was admitted to the Wesley Medical Center, complaining that he had injured his back while pulling a boxcar door shut on April 10, 1975, and had since that time experienced sharp pain running up and down his back. He said that he also had some headaches but he had no pain in his arms or legs. He was hospitalized until May 7, 1975, when he stated that he was much improved, and was discharged with instructions to continue physical therapy as an outpatient. Final diagnosis was chronic lumbosacral strain. (Tr. 98–100).

On June 30, 1975, plaintiff was seen at the Hertzler Clinic complaining of pain across the low back and pain in his right elbow. He also alleged difficulty in climbing stairs and a tendency to fall backward. The impression of Dr. Pokorny, the examining physician, was degenerative disc disease at L5–S1. (Tr. 105–106).

Plaintiff was admitted to the Hospital on June 30, 1975, for treatment for back pain. A lumbar myelogram showed defects at L3–4, L4–5, and L5–S1. The diagnosis was herniated nucleus pulposus (ruptured disc), L4–5, and unstable low back syndrome. Plaintiff was discharged from the Hospital on July 9, 1975, and was to return in a week for back surgery. (Tr. 108).

Plaintiff was again hospitalized, July 15 through July 26, 1975, for back surgery. Dr. Neonilo A. Tejano, an orthopedic surgeon, performed surgery to remove a ruptured disc, L4–5, and fuse L4–L5 to S–1. Plaintiff was sent to the recovery room in good condition, and there were no unusual post-operative complications. He was dismissed as improved with instructions for care. (Tr. 107–108).

Plaintiff was seen by Dr. Tejano at the Hertzler Clinic, May 4, 1976, complaining of pain in the low back at the area of the sacrum, not at the area of the operation, which radiated down the inside of his left thigh. Plaintiff also complained of pain and blood at his bowel movements. (Tr. 102). He was admitted to the Hospital for evaluation of the problem, May 9, 1976. It was determined that plaintiff's spinal fusion had proceeded satisfactorily. X-rays showed a solid fusion. Final diagnosis was postoperative back fusion, possible hemorrhoids, and anal fissure (ulcer). Plaintiff was dismissed as improved, and instructed to wear a back brace, May 12, 1976. (Tr. 103, 109). On June 23, 1976, plaintiff was seen as an outpatient by Dr. Tejano. Plaintiff felt better with the back brace but still complained of pain going down the left leg. Dr. Tejano advised him to continue wearing the brace for two more months, and then planned to re-evaluate him. (Tr. 109).

Plaintiff was again evaluated on August 23, 1976. Dr. Tejano noted that plaintiff still suffered pain, and recommended another lumbar myelogram. (Tr. 101). In a report to the ALJ dated November 26, 1976 (Tr. 110–111), Dr. Tejano stated that he recommended the additional myelogram because he noted the possibility of nerve root pressure on the 5th lumbar nerve root on the left, which could be secondary to hypertrophic bone formation, or possibly a ruptured disc from a previously retained disc. Dr. Tejano stated that he discussed the problem with plaintiff, and after going over it thoroughly plaintiff elected to go ahead and learn to live with the problem, refusing the myelogram. At the time of the August evaluation, plaintiff used a cane to walk. Dr. Tejano made the following evaluation of plaintiff's limitations:

I do not think he should carry anything over 25 pounds; stooping, bending, prolonged standing or sitting will be contraindicated—he should not sit or stand over 45 minutes at a time. He can only bend forward to within 8″ measured from fingertips to the floor, and probably won't be able to push or pull any weight more than 50 pounds. He can manipulate his arms and fingers—can raise his arms above shoulder level. Climbing up and down stairs will be limited, as he has a left leg pain and uses a cane. He can ride in or dirve [sic] a vehicle. He should be able to perform light duty of any kind. (Tr. 111).

Plaintiff testified about his physical condition at the hearing of January 11, 1977, before the ALJ. He complained of con-

stant back pain, and numbness and weakness in his left leg. He uses a cane to help his left leg. He has pain in his leg and back when he sits or stands too long, and must change positions every five or six minutes. According to plaintiff, he lies down frequently during the day to relieve pain. He testified that he takes three to four Empirins per day as needed to relieve pain. Occasionally, when he takes two Empirins at a time, they make him dizzy and drowsy. Plaintiff said that he decided not to undergo another myelogram because he did not want to go through surgery again, since there was no guarantee he would get better. (Tr. 35–52).

The vocational expert, Eudora Getz, testified that for a person in plaintiff's position, with physical impairments which required that he be able to sit or stand alternately as he chose and limiting him to light or sedentary work, possible jobs were doing bench work assembling or repairing small parts, of which there were 1,500 to 2,000 such jobs, light security work such as checking ID's at banks, dispatcher, truck weigher at a grain elevator, sand pit, or rock quarry, and cashier in a self-service gas station. Getz stated that all these jobs existed in the Wichita area. When asked what affect medication which made plaintiff dizzy or drowsy would have on his ability to do these jobs, Getz replied that if plaintiff's mental alertness were dulled it would have an adverse affect on working as a cashier, weigher, or dispatcher. She stated further that a loss of some mental alertness would adversely affect about 50 per cent of the bench jobs she had mentioned depending on the intricacy of the work involved. She did not believe that it would affect plaintiff's ability to work as a security guard in the type of position she had in mind, merely checking ID's and the like. (Tr. 61–72).

The ALJ found the following:

1. The claimant meets the earnings requirements through March 31, 1980.

2. The primary impairment considered was a low back condition initially diagnosed as a ruptured disc, and then considered the long convalescent period following spinal fusion.

3. It was found to be severe and disabling beginning April 11, 1975, concluding August 23, 1976.

4. During that period of time, the claimant did not have the residual physical capacity for the performance of any type of sustained physical activity, to include sedentary activities.

5. Since the concluding date, he does have the residual physical capacity for the performance of light or sedentary physical activities, subject to the restrictions contained in the body of this decision [those restrictions outlined in Dr. Tejano's report dated November 26, 1976], and specifically capable of performing a job in an alternate sitting and standing position, working with the upper part of his body and hands, together with a weight restriction of 25 pounds.

6. Mr. Crump, now about 27 years of age, a high-school education, has had a varied work background, most of the jobs requiring at least ordinary physical capacity.

7. Beginning April 11, 1975, concluding August 23, 1976, the claimant could not have resumed any of his past occupations nor engaged in any other type of substantial gainful activity.

8. Beginning August 24, 1976, the claimant can perform substantial gainful activity in the assembly of small parts, this done in an alternate sitting and standing position.

9. A substantial number of these jobs exist in this area, determined to be about 750 in number.

10. As defined by Title II of the Social Security Act, he was "disabled" beginning April 11, 1975, terminating August 23, 1976.

11. State of disability terminating August 23, 1976, period of disability and entitlement to benefits is extended to the end of the month of October 1976.

12. There may be a workmen's compensation set-off to be considered.

There was additional evidence received and considered by the Appeals Council. A

letter dated January 25, 1977, from Dr. Neonila A. Tejano, which was after the opinion of the ALJ was considered by the Appeals Council. This letter states:

> I wrote you on 26 November 1976 describing Mr. Crump's problem. Today I examined him again, complaining of more pain and symptoms, and found that the fusion actually ·was not as strong as I had felt that it was. He has more numbness and pain in the left lower extremity. The statement that he should be able to perform light duty of any kind, which I made on November 26th, was made in the belief that he could do some kind of clerical work. . . . I do not think he is able to do janitorial work of any kind. With the present limitation he would be disqualified for any of these types of jobs, and taking into account his education, training and intelligence, I would like to change my opinion that Mr. Crump can perform light duties. At the present time I would consider him as a totally disabled individual. (Tr. 120).

An additional letter from Dr. Tejano, September 3, 1977, reiterating the doctor's opinion that plaintiff was totally disabled because he could not perform janitorial or clerical work, was not a part of the record before the Secretary. In a Minute Order, May 11, 1978, this Court denied plaintiff's motion to remand the case back to the Secretary for further hearing based on these letters.

The requirements for a disability determination are statutorily created and are not in dispute. 42 U.S.C. §§ 416(i), 423.

■ It is well settled that in reviewing a social security case of this kind, a court is not authorized to re-weigh the evidence; its limited function is to determine whether the Secretary's findings of fact are supported by substantial evidence and the inferences drawn therefrom are reasonable. *Richardson v. Perales*, 402 U.S. 389, 28 L.Ed.2d 842, 91 S.Ct. 1420 (1971); *Trujillo v. Richardson*, 429 F.2d 1149 (10th Cir. 1970). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the Secretary's con-

clusion. *Richardson v. Perales, supra; Johnson v. Finch*, 437 F.2d 1321 (10th Cir. 1971). The claimant has the burden of proving some medically determinable impairment which prevents him from engaging in any substantial gainful activity. · 42 U.S.C. § 423(d)(1) and (3); *Lucas v. Richardson*, 348 F.Supp. 1156 (D.Kan.1972). The question is not whether the claimant is unable to return to his previous work, but rather whether considering his age, education, and work experience, he is unable to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Relevant evidence includes objective medical facts, expert medical opinion, subjective evidence of pain and disability, and claimant's present age, educational background and work history. *Keef v. Weinberger*, 404 F.Supp. 1193 (D.Kan.1975). A statement by a physician that an individual is or is not disabled and unable to work is a conclusion upon the ultimate issue to be decided by the Secretary, and is not determinative of the question of whether the claimant is disabled. The weight to be given such a statement depends on the extent to which it is supported by scientific and complete medical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment. 20 C.F.R. § 404.1526; *Lucas v. Richardson, supra.*

■ Among plaintiff's complaints is a subjective statement of inability to work because of pain. Such a statement is difficult to prove or disprove by evidence. Nevertheless, the Secretary must make a decision and the Court must determine whether it is supported by substantial evidence. *Dvorak v. Celebrezze*, 345 F.2d 894 (10 Cir. 1965). Pain may render a person disabled within the meaning of the Social Security Act, but not all pain is disabling. *Roark v. Secretary of HEW*, 433 F.Supp. 643 (E.D.Mo.1977). The inability of a person to work without some pain does not mean he is disabled. *Keef v. Weinberger, supra; Wren v. Weinberger*, 390 F.Supp. 507 (D.Kan.1975); *Adams v. Richardson,*

336 F.Supp. 983 (D.Kan.1972). Subjective symptoms of pain must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. *Dvorak v. Celebrezze, supra. See generally Keef v. Weinberger, supra.*

■ This Court has examined the records and briefs and concludes that there is substantial evidence to support the Secretary's decision that the disability ended in August 1976. The ALJ made this determination on the basis of Dr. Tejano's report, November 26, 1976, of his evaluation of plaintiff on August 23, 1976, in which Dr. Tejano outlined the physical restrictions which would limit plaintiff to the performance of light or sedentary activities. As the ALJ pointed out, the report is medical opinion showing a return of residual physical capacity following back surgery. The January 1977 letter of Dr. Tejano does not contradict his previous medical opinion as to plaintiff's capacity to work subject to physical restrictions. The vocational expert testified to jobs in the Wichita area which a person with plaintiff's physical restrictions would be able to perform. Dr. Tejano opined that plaintiff would not be able to perform janitorial or clerical work, but these jobs were not among those testified to by the vocational expert, and at any rate, the Secretary was not bound by Dr. Tejano's opinion.

The Secretary's finding that Crump was not disabled after August 23, 1976, from engaging in substantial gainful employment will be affirmed.

IT IS THEREFORE ORDERED that the Secretary's motion for summary judgment be, and it is hereby, granted.