Billy W. THOMPSON, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of
Health, Education, and
Welfare, Defendant.

Civ. A. No. 79–1249.

United States District Court,
D. Kansas.

Jan. 8, 1981.

Robert M. Green, Green & Green, El Dorado, Kan., for plaintiff.

James P. Buchele, U. S. Atty. by Kenneth L. Weltz, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

**WESLEY E. BROWN, District Judge.**

This action has been brought pursuant to 42 U.S.C. § 405(g) for judicial review of a final action of the Secretary of Health, Education and Welfare denying two claims for benefits under the Social Security Act.

Plaintiff filed an application under 42 U.S.C. § 423 for disability insurance benefits on February 8, 1978. On the same day, plaintiff also filed an application for supplemental security income benefits based upon disability under 42 U.S.C. § 1381 et seq. His claims were denied. At plaintiff's request, a hearing was held on November 21, 1978. On December 27, 1978, the Administrative Law Judge [ALJ] ruled against the plaintiff, finding that plaintiff was not under a "disability" as defined in the Social Security Act. On March 28, 1979, the Appeals Council of the Social Security Administration affirmed the hearing decision. The defendant has moved for summary judgment on the basis that the findings of the Secretary are supported by substantial evidence. Plaintiff moves to remand the case to the Secretary for the purpose of considering additional evidence.

In his application for disability benefits, plaintiff listed as his claimed disabilities "diabetes, bad back, enlarged prostrate, bad legs," alleging that he became unable to work because of his disabilities on January 13, 1978. He noted that he was off work from July, 1975 until May, 1976 because of a broken leg, and that he last worked for Alden Farm Supply, Alden, Kansas, from May, 1976 until January, 1978. (Exhibit 1).

Testimony at the hearing in November, 1978, reveals that plaintiff was then 47, six feet one inch tall, and weighed 265 pounds. With an eighth grade education, plaintiff had worked as a mechanic, laborer, groundskeeper. He last worked as a small engine mechanic for two years, but was discharged on January 13, 1978. Plaintiff testified that he could not work because of the painful condition of his back and hands, and that he was unable to lift objects due to pain in his elbows and shoulders. He stated that his back pain dated to an injury in 1969 when he was hit in the back with a telephone pole and that he is unable to sit for long periods of time due to this back pain. He cannot drive long distances for this reason. He also claimed that his ankles had been hurting for several years and that he had broken each one three times. He claimed that his ankles give him trouble if he walks more than a block, but that his hands are the main reason he cannot work, the other reasons being his back and ankles.

The medical evidence reveals that over a period of time plaintiff has received treatment for diabetes, ulcers, prostatic hypertrophy, obesity, asthma, a hiatal hernia, "blacking out" episodes, and degenerative changes of hands, knees, spine, feet and ankles.

In July, 1975, plaintiff was treated at Hutchinson Hospital for a torn ligament in his left knee, and was discharged with a splint and crutches. (Tr. 79) By January, 1976, he no longer needed crutches, although his recovery from the knee injury had been slow due to obesity. At that time he was able to do light work, but not heavy manual labor. (Tr. 80).

Plaintiff was hospitalized from November 28 until December 10, 1975 because of abdominal pain and vomiting. Diagnoses were (1) peptic ulcers; (2) diabetes mellitus; (3) chronic fracture of right fibula; and (4) depressive reaction. Recommendation at that time was for conservative management of the ulcers and treatment with antacids. (Tr. 83)

A vocational assessment was made on March 31, 1976 with the result that plaintiff's work quality was found to be adequate, although he was a slow worker. It was believed that he could do sedentary work if his glasses were corrected. (Tr. 85) Dr. McCoy, an opthamologist evaluated plaintiff's eyesight on May 26, 1976, and found him to have normal eyes for his age, requiring glasses only for reading. Dr. McCoy had the impression that plaintiff had tried to mislead the examiner. (Tr. 89–90)

It should be noted that at this time, in May, 1976, plaintiff began gainful employment, which continued until January 13, 1978.

In February, 1978, plaintiff applied to the Veterans Administration for medical benefits. He was hospitalized at the Veterans Hospital from February 9 to March 28, 1978 for evaluation of his medical problems. At that time he complained of excessive thirst, weight loss, joint pain and syncopal or "blacking out" episodes, and also of episodes when he lost his sight and his ability to move or talk. (Tr. 91) During this hospitalization it was determined that plaintiff's syncopal complaints were induced by coughing; his diabetes was gradually brought under control, and Dr. Richard Lies, a rheumatologist, determined that plaintiff had primary degenerative changes of the hands, knees and back, with no evidence of inflammatory arthropathy. The arthritic changes were treated with medication, exercise and other techniques. Plaintiff was also examined in the eye clinic, with the result that no definite ocular pathology was found to exist. A psychological examination resulted in a determination that a portion of plaintiff's symptoms could be described as "psychophysiological." It was felt that plaintiff received some secondary gain from his illness and that he would note benefit from psychotherapy.

The diagnosis of the Veterans Hospital at the time of plaintiff's discharge in March, 1978 was (1) diabetes mellitus, (2) cough syncope; (3) primary degenerative changes of hands, knees and back, with no evidence of inflammatory arthropathy; and (4) chronic obstructive pulmonary disease. (Tr. 91)

Plaintiff was referred to Dr. Frederick Wolfe and his arthritis center for evaluation of his musculoskeletal complaints. Dr. Wolfe, in his report dated May 18, 1978, stated that plaintiff was uncooperative during his examination and that all examiners felt he made conscious attempts to mislead them as to the extent, type, and severity of his complaints. (Tr. 177–182) X-ray evidence disclosed mild degenerative changes in plaintiff's hands, wrists, lumbo-sacral spine, right foot and right ankle and slight degenerative changes in his left foot and left ankle. (Tr. 178–179) Dr. Wolfe concluded:

*IMPRESSION*

1. DEGENERATIVE DISEASE OF THE LUMBO–SACRAL SPINE. 2. SIGNIFICANT AND SEVERE OBESITY. 3. CONSCIOUS ATTEMPTS TO MISLEAD EXAMINERS.

There is no reason that could be determined for the patient's pain in his hands and wrists. His physical evaluation, x-rays all suggested normality or mild disease only. It is difficult to evaluate the severity of the back pain because of patient cooperation. We could not find an important objective for cause of pain in the feet. In general it would appear that Mr. Thompson has some degree of degenerative disease of the lumbo-sacral spine, an unknown and unquantifiable amount of disease of the hands and feet—probably very mild. There are no important functional abnormalities in these areas. In spite of his efforts to mislead us his range of motion and muscle strength in these areas appears normal. The major

mitigating factor is his motivation and his obesity and to a lesser extent only his weight. Mr. Thompson appears capable of moderately sustained physical labor. It is probable however, that lifting of heavy objects without assistance or prolonged standing might indeed be difficult. He appeared capable however of moderate physical labor for intermittent to long periods of time and certainly for less activity than that. (Tr. 179).

During evaluation at the Kansas Vocational Rehabilitation Center from August 27 to September 7, 1978, plaintiff was examined by Dr. Holman, a psychiatrist, who observed that plaintiff was caught up in multiple somatic complaints. Dr. Holman saw the problem as the extent to which plaintiff was willing to distort his actions to match his chronic attitude that he simply cannot do anything.

The vocational Rehabilitation staff noted that plaintiff "had a great deal invested in appearing quite disabled to the KVRC staff," (Tr. 205) and that plaintiff came to the evaluation setting with a definite idea that he had to show that there was nothing he could do.

Plaintiff was readmitted to the Veterans Hospital in Wichita from September 21 to October 12, 1978 for evaluation of complaints of pain and swelling in his hands, knees, and ankles. The hospital report listed the following diagnoses: (1) Probable atypical seronegative rheumatoid arthritis; (2) Bilateral carpal tunnel syndrome;[1] (3) Dyspnea and wheezing, improved by aminophalline; (4) Chronic prostatitis, sterile, with a need for follow-up to rule out carcinoma; (5) Depression; and (6) Diabetes mellitus, adequately controlled by diet. (Tr. 208) During his stay, plaintiff was placed on suicide precautions for 48 hours. It was uncertain if his suicide threats were genuine or an attempt to manipulate those around him. The report states that both elements were probably present. (Tr. 210) As to employability, the report states:

This was a sore point between the patient and his physicians throughout his hospitalization. Patient is quite sure that he is unable to work, his physicians are less sure that his medical condition implies permanent unemployment. Mr. Thompson definitely has evidence of erosion on x-ray, and physical findings consistent with joint pain and had decreased grip strength. However, the patient seems unwilling to explore any alternative to his present job and although his pain is indeed real, it is not necessarily true that there are no jobs he could master. Hutchinson State Vocational Rehabilitation Center stated the patient was unable to work because of his medical condition. We do not know the basis for this statement and cannot confirm it with out own work-up. In summary, we are not sure about the patient's ability to return to employment but presume that he could find some job if he pursued the matter actively. (Tr. 210)

A vocational witness, William Lawrence, also testified at the hearing. The ALJ asked the vocational expert if there were any jobs the plaintiff could perform, considering the plaintiff's age, education, vocational background and physical limitations. It was to be assumed that plaintiff's upper extremities are impaired to a ten per cent loss of strength and dexterity; that he could be on his feet for only one half of a work day with no repeated lifting over ten or fifteen pounds and no lifting over 25 pounds. (Tr. 38–39) The vocational expert noted that agricultural work was ruled out because it involved lifting. He then noted the existence of 400 small engine repair or small bench assembly jobs in the gross, light and sedentary categories, but added that plaintiff would have to drive to them from Alden. He noted the possibility of farm and auto parts sales, but they might require standing more than half a day and also required driving. The expert also noted the existence of jobs in dispatching, sani-

---

1. "A complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." Dorland's Illustrated Medical Dictionary, 24th Edition.

tary and waterworks inspection, taxi driving, and chair refinishing. (Tr. 39–40)

On the basis of the hearing testimony and the documents of record, the ALJ determined that the plaintiff was not disabled. More specifically, the ALJ found that plaintiff has musculoskeletal impairments, but not of a disabling degree and extent; that he is unable to perform heavy manual labor or work requiring walking or standing more than one-half work day; that he could not lift more than ten to fifteen pounds infrequently or 25 pounds occasionally but is otherwise able to function satisfactorily; that, considering his residual physical capacity and vocational background, plaintiff is able to perform jobs which are present in significant numbers in the region where he lives, such jobs including small engine repairs, bench assembly, farm and auto parts sales; dispatching; waterworks sanitation inspection and furniture refinishing. (Tr. 11–12) The ALJ stated:

The testimony of the claimant concerning the severity of his pain and discomfort is not supported by evidence and is not credible. (Tr. 11)

■ Plaintiff has asked the court to consider new medical evidence. The court cannot consider evidence not in the record, as this review is not a trial *de novo*. *Atteberry v. Finch*, 424 F.2d 36 (10th Cir. 1970). Any additional evidence which the plaintiff contends is pertinent would have to persuade the court to order the case remanded. In order for remand to be granted, plaintiff must show "good cause." 42 U.S.C. § 405(g). "Good cause" is more than a desire to relitigate the same issues. Where it appears claimant seeks only the opportunity to provide additional medical evidence which amounts only to a relitigation of the medical issues, remand will not be ordered. *Bradley v. Califano*, 573 F.2d 28 (10th Cir. 1978). Plaintiff has the burden of demonstrating that if such evidence is made a part of the record, the decision of the Secretary may be different. *Pugh v. Sec'y of Health, Education and Welfare*, 448 F.Supp. 37 (D.Kan.1978).

Plaintiff has shown the court the evidence he wishes to introduce. It consists of a deposition by interrogatories of Dr. John B. Robb. Dr. Robb testifies that plaintiff is disabled, will remain so for at least twelve months and, based on a reasonable medical certainty, will be permanently disabled. Dr. Robb testifies that arthritis in plaintiff's hands prevents plaintiff from using his hands over any considerable period of time and arthritis in plaintiff's knees and back limit his ability to sit or stand in one position for more than a short time. Dr. Robb also mentioned plaintiff's pulmonary conditions and diabetes.

■ The Court concludes that the evidence is cumulative, would not change the decision of the Secretary, and that remand would amount only to a relitigation of the medical issues. Dr. Robb's findings provide no new objective medical evidence. There is ample evidence in the record that plaintiff suffers from arthritis in the hands, ankles and back, pulmonary problems and diabetes. (Tr. 92–93, 177–179, 210) The only thing new about this evidence is that it is a medical doctor's opinion that claimant is disabled. It is to be remembered that a statement by a physician that an individual is or is not unable to work is a conclusion upon the ultimate issue to be decided, and is not determinative. *Lucas v. Richardson*, 348 F.Supp. 1156 (D.Kan.1972) The weight to be given such an opinion depends upon the extent to which the opinion is supported by scientific and competent medical findings. *Lucas v. Richardson, supra*, at 1162. In this case, Dr. Robb's conclusion that plaintiff is disabled appears to have little grounding in any objective medical tests or findings and appears to be based mostly on plaintiff's subjective complaints. The ALJ has already considered similar objective medical evidence and has expressly evaluated plaintiff's subjective complaints of pain. There is no reason to believe Dr. Robb's evidence might change the opinion of the Secretary. As plaintiff has failed to establish "good cause," the motion to remand will be denied.

The court now turns to defendant's motion for summary judgment. It is not the

court's function to re-weigh the evidence in this case, but only to determine whether the Secretary's findings are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 892 (1971). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support the Secretary's findings. *Johnson v. Finch,* 437 F.2d 1321, 1323 (10th Cir. 1971). Relevant evidence includes objective medical facts, expert medical opinion, subjective evidence of pain and disability, and claimant's present age, education and work history. *Keef v. Weinberger,* 404 F.Supp. 1193 (D.Kan.1975).

██ It is the court's duty to scrutinize the entire record to determine whether the Secretary's findings are rational. *Mitchell v. Weinberger,* 404 F.Supp. 1213, 1215 (D.Kan.1975). The court must examine all the evidence, including the evidence which detracts from or negatives the findings of the ALJ. The court cannot affirm the decision just by isolating a few facts and determining that they constitute substantial evidence. *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975).

██ The Social Security Act was designed to ameliorate some of the rigors of life and should be liberally construed. *Mandrell v. Weinberger,* 511 F.2d 1102 (10th Cir. 1975). In light of this, it is not surprising that the courts have held that pain may be so real and so intense as to support a claim for disability benefits. *E. g., Dvorak v. Celebrezze,* 345 F.2d 894 (10th Cir. 1965). It is not required, however, that benefits be granted "whenever there is a subjective showing that a man cannot work because he hurts. Subjective symptoms must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment." *Dvorak, supra,* at 897. The plaintiff has the burden of proof that the pain is disabling. *Manigan v. Califano,* 453 F.Supp. 1080 (D.Kan.1978).

██ Plaintiff argues that there is a lack of substantial evidence to support the findings of the ALJ. This argument is basically supported by an attempt to show that there is substantial evidence in support of plaintiff's claim of disability. Plaintiff points to the following evidence of record: (1) observations that plaintiff has difficulty in using his hands and in walking (Tr. 72, 77); (2) assessments of vocational evaluations that plaintiff, who did poorly on tests due to slowness in working, is not feasible for employment (Tr. 85, 204); (3) psychological problems centered around somatic concerns and his attitude that he cannot do anything (Tr. 88, 205) and (4) plaintiff's subjective complaints of pain. Taken together, these pieces of evidence do tend to point towards a finding of disability. The test, however, is not whether evidence of disability exists, but whether substantial evidence exists in support of the finding that plaintiff is not disabled.

Plaintiff's evidence of pain was contradicted by expert medical opinion as to plaintiff's capabilities and employability and evidence of record tending to discredit plaintiff.

It was the conclusion of Dr. Wolfe that no reason could be determined for plaintiff's complaints as to pain in his hands and wrists. Dr. Wolfe noted that tests suggested normality or mild disease only in the hands and wrists and concluded that patient appeared capable of at least moderate physical labor for intermittent to long periods of time. (Tr. 179) The hospital summary of the Wichita Veterans Administration Hospital discharging plaintiff on October 12, 1978 states that while there was evidence of erosion on x-rays and physical findings consistent with joint pain, it was not necessarily true that plaintiff could not work. The VA hospital was unable to confirm the finding of the Vocational Rehabilitation Center staff that plaintiff was unable to work because of his medical problems, and concluded that they presumed plaintiff could find work if he pursued the matter actively. (Tr. 210) While a statement by a physician that an individual is or is not able to work is a conclusion upon the ultimate issue and is not determinative, it is evidence, the weight of which depends upon the extent to which it is supported by scientific and competent medical findings and the extent to which it is consistent with other evidence. *Lucas v. Richardson, supra,* 348 F.Supp. 1156. Dr.

Wolfe's opinion appears to be supported by scientific and competent medical findings, as do the conclusions of the Veterans Hospital staff. These conclusions are also consistent with evidence which tends to discredit plaintiff's subjective claims of pain.

Cases involving the evaluation of pain are always difficult. If this were a case where plaintiff's evidence of pain was uncontradicted, supported by medically observable physical evidence, and where there was no evidence of record suggesting any basis for discrediting plaintiff, this court might well deny summary judgment and remand for further proceedings. In this case, however, the medical evidence is contradictory and, if anything, tends to support the findings of the Secretary. There is also ample evidence tending to discredit the plaintiff. The ALJ is in the best position to consider the credibility of the plaintiff and has explicitly done so. As the court concludes that substantial evidence exists to support the Secretary's findings, summary judgment in favor of the defendant should be granted. Accordingly,

IT IS ORDERED that plaintiff's Motion to Remand be, and it is hereby Overruled; and

IT IS ORDERED that defendants' Motion for Summary Judgment be, and it is hereby Sustained.